**E-FILED**
Wednesday, 05 June, 2013  12:02:57 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LAND OF LINCOLN GOODWILL INDUSTRIES, INC., an Illinois Not for Profit Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.12-cv-3259 |
| THE PNC FINANCIAL SERIVCES GROUP, a/k/a PNC Bank NA, a national bank, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on cross motions for judgment on the pleadings. Plaintiff Land of Lincoln Goodwill Industries, Inc.'s (Goodwill) Motion for Judgment on the Pleadings (d/e 12) (Goodwill Motion); Defendant PNC Bank, National Association's (PNC) Cross-Motion for Judgment on the Pleadings (d/e 13) (PNC Motion) (collectively the Cross-Motions). The parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before this Court. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, entered January 28, 2013 (d/e 10).

Goodwill brought this action to secure a declaratory judgment concerning the meaning of the prepayment provision, § 9.1(b) of a Loan

Agreement dated September 1, 2007 (Loan Agreement), entered into between Goodwill, Sangamon County, Illinois (County), and PNC's predecessor National City Bank (National City) and Illinois, as assignee of the County.  Notice of Removal (d/e 1), Exhibit A, Complaint for Declaratory Judgment (Complaint), Exhibit 1, Loan Agreement.  Under the terms of the Loan Agreement, the County issued $2,000,000.00 in tax exempt economic development revenue bonds (Bonds) and loaned the proceeds to Goodwill to finance a development project (Project) for Goodwill.  The loan was evidenced by a promissory note (Note) executed by Goodwill.  Goodwill was, thus, obligated to pay the Bonds.  The indebtedness was also secured by a mortgage on the Project.  National City funded the transaction by purchasing the Bonds and accepting the assignment of the County's rights under the Loan Agreement and Note.  The Loan Agreement referred to National City as both the "Assignee" and the "Purchaser."  PNC acquired National City on December 31, 2008.

On March 30, 2012, Goodwill notified PNC that it intended to prepay the indebtedness in full.  Complaint, Exhibit 8, Notice of Redemption and Prepayment (Notice).  PNC notified Goodwill that it would have to pay a prepayment charge in excess of $300,000.00 if it chose to prepay the indebtedness.  Complaint, Exhibits 9-11.  Goodwill filed this action in state

court to seek a declaratory judgment that the prepayment charge provision of the Loan Agreement § 9.1(b) did not apply.  PNC removed the action to this Court.  The parties then filed the Cross-Motions.  For the reasons set forth below, the Court finds that § 9.1(b) applied to Goodwill's planned prepayment of the indebtedness set forth in the Notice.  The Court therefore allows the PNC Motion and denies the Goodwill Motion.

STATEMENT OF FACTS

On October 5, 2007, Goodwill, the County, and National City executed the Loan Agreement, Note, and related documents to close the $2,000,000.00 revenue Bond issue and loan to Goodwill.  The Loan Agreement, by its terms was dated September 1, 2007, even though it was executed on October 5, 2007.  Loan Agreement, § 10.9.  The term of the loan was 20 years, commencing on October 5, 2007.

The Loan Agreement defined a number of relevant terms.  The Loan Agreement defined the "Initial Rate" as 4.79% per annum.  The Loan Agreement defined an "Interest Rate Adjustment Date" as October 5, 2017. The Loan Agreement defined the "Adjusted Rate" as "the rate calculated on the Interest Rate Adjustment Date by Purchaser equal to Purchaser's Cost of Funds on the Interest Rate Adjustment Date plus .80%."  The Loan Agreement defined the "Base Rate" as "the floating, daily, variable rate per

annum of interest determined and announced by Assignee from time to time as its 'Base Lending Rate' . . . ."  The Loan Agreement defined the "Taxable Interest Rate" as "a rate of interest per annum equal to the Base Rate from time to time in effect."  <u>Loan Agreement</u>, § 1.1 <u>Definitions and Rules of Construction</u>.

The Loan Agreement called for Goodwill to make monthly payments of principal and interest accruing at the Initial Rate, amortized over 20 years, for the first ten years of the loan until the Interest Rate Adjustment Date.  Thereafter, the Loan Agreement called for Goodwill to make monthly payments of principal and interest accruing at the Adjusted Rate, amortized over 10 years, until the loan was repaid in full.  If, however, the bonds were ever determined not to be tax exempt, then interest would accrue at the Taxable Interest Rate, which would be equal to National City's, and now PNC's, daily floating Base Rate.  <u>Loan Agreement</u>, Schedule 2, <u>Amortization Schedule</u>; <u>Complaint</u>, Exhibit 5, <u>Note</u>.

Article IV of the Loan Agreement obligated Goodwill to use the funds for the construction project for which the County authorized the issuance of the bonds.  Section 4.5 provided that, upon completion of the project, any remaining unspent proceeds from the Bonds, "shall be transferred to the

Bond Fund and applied in accordance with Section 5 of the Bond

Resolution and Section 9.3 of this Loan Agreement."  Agreement, § 4.5.

Article IX of the Loan Agreement addressed prepayment of the

indebtedness.  Article IX stated, in part,

ARTICLE IX
PREPAYMENT OF THE NOTE

Section 9.1. General Optional Prepayment.

The principal installments of the Note are subject to prepayment (concurrently with prepayment of the Bonds) at the option of the Borrower at any time, in whole or in part, subject to the following prepayment charge (the "Prepayment Charge"):

(a)    The Borrower shall have the right to prepay the principal installments of the Note in whole or in part, *provided,* that (i) each such prepayment shall be in the principal sum of One Thousand and No/100 Dollars ($1,000.00) or any integral multiple thereof or an amount equal to the then aggregate unpaid principal balance of the Note, (ii) each such prepayment shall be applied to the installments of the Note in the inverse order of their respective due dates, and (iii) concurrently with the prepayment of the entire unpaid principal balance of the Note, the Borrower shall prepay the accrued interest on the principal being prepaid.

(b)    If the Note is

(i)    prepaid, in whole or in part, during a period when the unpaid principal balance bears interest, or is scheduled to bear interest, at a fixed rate, or

(ii)    accelerated after the occurrence of an Event of Default hereunder, during a period when the unpaid principal balance bears interest, or is scheduled to bear interest, at a fixed rate,

and if, on the date of the occurrence of either (i) or (ii) above, or with respect to any partial prepayment for which a Funding Cost Recovery Charge was not determined on the date of occurrence, on the date of any subsequent prepayment for which a Funding Cost Recovery Charge is determined (each a **"Determination Date"**), the Reinvestment Rate is less than the Funding Cost, then a **"Funding Cost Recovery Charge"**, computed in accordance with the terms of the Funding Cost Recovery Charge Addendum, shall be payable by the Borrower to the Purchaser at the time of prepayment or acceleration as applicable.  The Purchaser's right to collect any Funding Cost Recovery Charge shall accrue as of each Determination Date, and any delay on the Purchaser's part to determine, or notify the Borrower as to, the amount of any Funding Cost Recovery Charge shall not constitute a waiver of, or otherwise limit, the Purchaser's right to recover a Funding Cost Recovery Charge otherwise payable pursuant to the terms hereof.

The terms **"Reinvestment Rate"** and **"Funding Cost"** are defined in the Funding Cost Recovery Charge Addendum. The Borrower's execution of this Loan Agreement and the Note shall constitute acknowledgment that the Borrower has received a complete copy of the Funding Cost Recovery Charge Addendum.  The Purchaser's determination of the Funding Cost Recovery Charge shall be conclusive absent manifest error.

Section 9.2. <u>Optional Prepayment if Tax Exemption is Lost</u>.

If there shall have been made a Determination of Taxability, the Borrower shall have the option to prepay the Note in whole.  The amount to be prepaid pursuant to this Section shall be equal to the principal amount of all Outstanding Bonds, plus accrued interest at the Taxable Interest Rate to their redemption date to the extent the interest is taxable income to the Registered Owners of the Bonds, plus any applicable Prepayment Charge.  . . .  In the event the Borrower does not exercise the instant option to redeem, then (i) the interest payable on all Notes then outstanding shall be adjusted

to the Taxable Interest Rate, and (ii) the Assignee may demand prepayment by the Borrower of the Note.

Section 9.3. <u>Mandatory Prepayment upon Transfer from Project Fund</u>.

If any amounts are transferred from the Project Fund to the Bond Fund pursuant to Section 4.5 of this Loan Agreement, the Borrower shall prepay the Note in an amount equal to the principal amount of Bonds required to be redeemed on such an occurrence pursuant to Section 5 of the Bond Resolution, plus any applicable Prepayment Charge. Said amount shall be paid by the Borrower to the Assignee not later than the date the Bonds are to be redeemed pursuant to such provision.

The Borrower will promptly notify the Issuer and the Assignee in writing of the occurrence and existence of an event which will result in mandatory prepayment under this Section 9.3.

<u>Agreement</u>, §§ 9.1-9.3 (emphasis in the original). The Funding Cost Recovery Addendum (Addendum) defined the terms "Reinvestment Rate" and "Funding Cost" and provided a formula for calculating the Funding Cost Recovery Charge. The Addendum stated, "***'Funding Cost'*** means Bank's original Cost of Funds used in determining the fixed rate in effect, or scheduled to be in effect, at the time of prepayment or acceleration, as applicable." <u>Addendum</u>, at 1 (emphasis in the original). The Funding Cost Recovery Charge formula required performing a set of calculations "[f]or each period that bears interest, or is scheduled to bear interest, at a known fixed rate." <u>Addendum</u>, at 1. The Addendum was dated October 5, 2007,

the day that the Loan Agreement was signed, and was signed by

Goodwill's Chief Executive Officer.  Memorandum in Support of

Defendant's Cross-Motion for Judgment on the Pleadings and in

Opposition to Plaintiff's Motion for Judgment on the Pleadings (d/e 14)

(PNC Memorandum), Exhibit A, Addendum.[1]

The Note also addressed prepayment, substantially repeating the

language from the introductory portion of § 9.1 of the Loan Agreement:

> The principle installments of this Promissory Note are subject to prepayment (concurrently with prepayment of the Bonds) at the option of the Borrower at any time, in whole or in part, with a prepayment charge as set forth in the Loan Agreement.

Note, at 3.[2]

The County executed on October 5, 2007, Internal Revenue Service

(IRS) Form 8038, entitled "Information Return for Tax-Exempt Private

Activity Bond Issues" (Form 8038).  Complaint, Exhibit 7, Form 8038.  The

Form 8038 stated on line 21 that the yield on the bonds was "Variable

Rate."  Id.  The County filed Form 8038 with the IRS.

On March 30, 2012, Goodwill sent PNC a notice that it was electing

to prepay the indebtedness in full on May 17, 2012.  Complaint, Exhibit 8,

---

[1] The terms "Prepayment Charge" and "Funding Cost Recovery Charge" as used in § 9.1 are interchangeable.  The Court uses the term Prepayment Charge in this Opinion.
[2] The pages of the Note are not numbered.  The page number assigned by the Court's CM/ECF system is Document No. 1-2 Page 41 of 69.

<u>Notice of Redemption and Prepayment</u>.  On April 3, 2012, PNC sent Goodwill a payoff calculation assuming a payoff date of April 4, 2012.  The notice stated that the Prepayment Charge would be $404,619.01.  <u>Complaint</u>, Exhibit 9, <u>Loan Payoff Calculation dated April 3, 2012</u>.  On May 7, 2012, PNS sent Goodwill a payoff calculation assuming a payoff date of May 9, 2012.  The notice stated that the Prepayment Charge would be $300,200.82.  <u>Complaint</u>, Exhibit 10, <u>Loan Payoff Calculation dated May 7, 2012</u>.  On June 25, 2012, PNS sent Goodwill a payoff calculation assuming a payoff date of June 27, 2012.  The notice stated that the Prepayment Charge would be $303,131.24.  <u>Complaint</u>, Exhibit 11, <u>Loan Payoff Calculation dated June 25, 2012</u>.

Goodwill thereafter filed this action for a declaratory judgment.  Goodwill asks the Court to declare that § 9.1(b) of the Loan Agreement, quoted above, does not apply to Goodwill's indebtedness governed by the Loan Agreement and evidenced by the Note and Bonds.  Goodwill alleges, in pertinent part,

> 12.    Sec. 9.1(b) of the Loan Agreement provides that a "funding Cost Recovery Charge"—otherwise known as a prepayment penalty in common parlance—can be assessed in the case of a Loan and Note that bear interest "at a fixed rate" (p.34).  In the instant case the Goodwill loan described in the Loan Agreement is <u>not</u> a fixed rate loan.  Rather, by its clear terms the rate "adjusts".  This, it is an *"adjustable rate loan"*,

and not subject to the provisions of Sec. 9.1(b) of the Loan
Agreement.

Complaint, ¶ 12 (emphasis in the original).  Goodwill asks the Court to

declare that the, "Bonds and Loan to Goodwill bear interest at an

Adjustable or Variable rate and are not subject to a penalty in the event of

prepayment by Goodwill."  Complaint, at 8 Prayer for Relief.  Goodwill

further asks this Court to direct PNC to accept prepayment without any

prepayment charge in full satisfaction of the indebtedness and redemption

of the bonds and release of all collateral securing the indebtedness,

including the mortgage on the Project.  Id.  Both parties now seek judgment

on the pleadings.

## ANALYSIS

For purposes of the Motion, the Court may consider all pleadings,

including the Complaint, Answer, and attached exhibits.  Fed. R. Civ. P.

12(c); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,

163 F.3d 449, 452 (7th Cir. 1998).  The documents attached to the

Complaint are part of the Complaint for all purposes.  Fed. R. Civ. P. 10(c).

The Loan Agreement, which is attached to the Complaint, refers to the

Addendum.  Loan Agreement, § 9.1(b).  The Addendum, thus, also may be

considered because the Complaint, through the Loan Agreement,

specifically refers to the Addendum, and the Addendum is central to Goodwill's claim.  188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002).  The Court may also consider matters of public record, such as the IRS instructions for Form 8038.  United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991).

Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b) motions.  Id.  The Court must accept as true all well-pleaded factual allegations and draw all inferences in the light most favorable to the non-moving party.  See Radaszewski ex rel. Radaszewski v. Maram, 383 F.3d 599, 600 (7th Cir. 2004); Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  The Court, however, is not obligated to give any weight to unsupported conclusions of law.  R.J.R. Services, Inc. vs. Aetna Cas. and Sur. Co., 895 F.2d 279, 281 (7th Cir. 1989).  Claims that raise a pure issue of contract interpretation may be resolved by motions for judgment on the pleadings because the construction of a written contract is a matter of law.  See Asta, LLC v. Telezygology, Inc., 629 F.Supp.2d 837, 842 (N.D. Ill. 2009).

The issue is the applicability of § 9.1(b) of the Loan Agreement to prepayment of the indebtedness pursuant to Goodwill's March 30, 2012,

Notice.  The communications between the parties attached to the Complaint make it clear that Goodwill was not in default on the Note or Bonds at the time of the Notice, and that no determination had been made that the Bonds had lost their tax exempt status.  Complaint, Exhibits 8-12.

The Complaint only puts at issue the construction of § 9.1(b).  The Complaint does not challenge the enforceability of § 9.1(b) on some other grounds, such as a claim that the clause is unenforceable as an illegal penalty.  The Complaint further does not put at issue the accuracy of PNC's calculations of the Prepayment Charge on any of the prepayment payoff notices.  Rather, Goodwill only challenges whether PNC should have made the calculations at all.  The sole issue is whether, as a matter of contract interpretation, § 9.1(b) applies to a prepayment of the indebtedness by Goodwill when Goodwill is not in default and the Bonds have not lost their tax exempt status.

The interpretation of contract is a matter of law in Illinois.  GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 621(7th Cir. 1995).  When interpreting a contract, all documents that are entered into simultaneously should be construed together, and the Court must give meaning to all of the stated terms.  Id. at 622.  Absent an ambiguity, the

Court must give effect to the plain meaning of all of the terms of the agreement,

> [A] construction should be adopted, if possible, which ascribes meaning to every clause, phrase or word used; which requires nothing to be rejected as meaningless, or surplusage; which avoids the necessity of supplying any work or phrase that is not expressed; and which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other.

Curia v. Nelson, 587 F.3d 824, 829 (7th Cir. 2009).  See ConFold Pacific, Inc. v. Polaris Ind., 433 F.3d 952, 955 (7th Cir. 2006); Atlantic Mut. Ins. Co. v. Metron Engineering and Const. Co., 83 F.3d 897, 898 (7th Cir. 1996).

In this case, the plain meaning of the documents, viewed as a whole, manifest a general intent that Goodwill could prepay at any time subject to a Prepayment Charge.  The Note states that the, "principle installments of this Promissory Note are subject to prepayment (concurrently with prepayment of the Bonds) at the option of the Borrower at any time, in whole or in part, with a prepayment charge as set forth in the Loan Agreement."  The introductory statement of § 9.1 similarly states that the indebtedness is, "subject to prepayment (concurrently with prepayment of the Bonds) at the option of the Borrower at any time, in whole or in part, subject to the following prepayment charge (the "Prepayment Charge")."

These two statements indicate that the parties intended that a prepayment would be subject to a Prepayment Charge.

Article IX of the Loan Agreement governs prepayment of the indebtedness evidenced by the Note and Bonds.  According to Article IX, the applicability of the Prepayment Charge depends on the circumstances that exist at the point in time of the prepayment.  Section 9.1 applies if the prepayment occurs, "during a period when the unpaid principal balance bears interest, or is scheduled to bear interest, at a fixed rate."  Loan Agreement, §§ 9.1(b) (i) and (ii).  Section 9.2 applies "[i]f there shall have been made a Determination of Taxability," i.e., if the Bonds lose their tax exempt status.  Loan Agreement, § 9.2.  Finally, § 9.3 addresses a special circumstance if funds are left over after completion of the project.  Section 9.3, in combination with § 4.5, provides that any funds left over must be applied as a partial prepayment of the indebtedness.

When read together, §§ 9.1 and 9.2 cover the two circumstances that could exist under the Loan Agreement.  Section 9.1 applies when the prepayment occurs at a point in time when the principal bears interest at a fixed rate.  For the first ten years, the principal of the indebtedness bears interest at the Initial Rate of 4.79% per annum, and for the last ten years, the principal bears interest at the Adjusted Rate determined on October 5,

2017.  During each of these ten year periods, the principal bears interest at a fixed rate.  During these periods, Goodwill may at its option make a partial or full prepayment subject to a Prepayment Charge if the Reinvestment Rate is less than the Funding Cost, pursuant § 9.1(b) and the Addendum.  Section 9.2 applies if a Determination of Taxability occurs and the interest rate changes to a daily floating rate based on PNC's published base rate.  Under  § 9.2, Goodwill could prepay the indebtedness in full or PNC could demand prepayment in full.

Section 9.2 does not call for a prepayment fee based on the outstanding balance at the time.  Section 9.2 only refers to "any applicable Prepayment Charge."  The term "Prepayment Charge" is defined under § 9.1.  The calculations of a Prepayment Charge in § 9.1 do not apply to a prepayment of principal under § 9.2 because the interest accrues a daily floating rate after a Determination of Taxability.  Furthermore, the formula for the Funding Cost Recovery Charge cannot apply because the calculations must be performed for each period that bears interest at a "known fixed rate," and there is no known fixed rate after a Determination of Taxability.  Section 9.1, however, contemplates that a Prepayment Charge accrues if Goodwill makes a partial prepayment, but PNC may wait to notify Goodwill and collect the Prepayment Charge a later date.   Thus, the term

in § 9.2 "any applicable Prepayment Charge" means any outstanding

unpaid Prepayment Charge on a previous partial prepayment.

The Addendum also supports the conclusion that the parties used the

term "fixed rate" to identify whether a prepayment occurs at a period of time

when the interest accrues at a stated rate, such as the Initial Rate and the

Adjusted Rate.  As quoted above, the Addendum states that the Funding

Cost depends on "the fixed rate in effect, or scheduled to be in effect, at the

time of prepayment or acceleration, as applicable."  This language

indicates that the fixed rate could change depending on the point in time

that Goodwill would elect to make a prepayment.  The Addendum's formula

for the Funding Cost Recovery Charge calls for calculating the charge "for

each period that bears interest, or is scheduled to bear interest, at a known

fixed rate."  This language indicates that the repayment of the indebtedness

will be divided into different periods when the indebtedness accrues

interest at known fixed rates.

In this case, under Section 9.1(b)(i) Goodwill sent PNC the Notice

that it intended to prepay the balance of the indebtedness on May 17,

2012.  At that time, the principal was bearing interest at the fixed rate of

4.79 % per annum, the Bonds were tax exempt, and Goodwill was not in

default.  Goodwill's proposed prepayment, thus, would be subject to

§ 9.1(b) and the Addendum and would owe any applicable Prepayment

Charge.

Goodwill argues that § 9.1(b) of the Loan Agreement is surplusage

because the indebtedness evidenced by the Note and Bonds never

accrues interest at a fixed rate.  Rather, the interest rate is adjustable or

variable because the rate is subject to change on October 5, 2017.  Thus,

according to Goodwill, § 9.1(b) is mere surplusage:

> PNC has pointed to the language in Section 9.1(b) of
> Article IX which says that *if* the loan bears a fixed interest rate,
> then a Funding Cost Recovery Charge applies.  Yet, there
> being <u>no mention or reference</u> whatever in the Loan Agreement
> to Goodwill's loan supposedly containing a fixed interest rate,
> this language is merely merely (sic) surplusage.  It is not
> uncommon in a contract with a bank for the bank to cover cover
> (sic) every situation that might occur; and, as such, extra
> language regarding an unrelated situation appears in the
> contract.

<u>Plaintiff's Motion for Judgment on the Pleadings (d/e 12)</u>, at 14-15

(emphasis in the original).  Goodwill cites no authority for the proposition

that banks commonly include superfluous material in agreements, and the

Court is not aware of any authority to support this construction of bank

contracts.  This is also not a case where a loan officer filled in some blanks

on a form document that a bank may use for many different purposes.

Rather, these documents were prepared for this specific transaction by the

County's bond counsel in cooperation with National City.  <u>Complaint</u>, ¶ 9.
Thus, normal principles of contract construction apply.

The Court, therefore, must construe the documents to give meaning
to all of the terms.  <u>Curia</u>, 587 F.3d at 829 (7th Cir. 2009); <u>Atlantic Mutual</u>
<u>Insurance Co.</u>, 83 F.3d at 898.  Goodwill's interpretation contradicts
statements in the Note and the introduction of § 9.1 that prepayment would
be subject to a Prepayment Charge.  Under Goodwill's interpretation, a
Prepayment Charge is never due because § 9.1(b) never applies and the
rest of Article IX, and § 9.2 in particular, do not call for the payment of a
Prepayment Charge.  Goodwill's interpretation also makes superfluous all
of § 9.1(b) and much of the Addendum.

Goodwill argues that the Addendum is not part of the agreement of
the parties.  The Court disagrees.  The Loan Agreement references the
Addendum, and the Addendum is signed by Goodwill and is dated October
5, 2007, the same date that all of the documents were signed.  As such, the
Addendum is part of the parties' agreement.  <u>GNB Battery Technologies,</u>
<u>Inc.</u>, 65 F.3d at 622.

The Court must give meaning to all portions of the parties'
agreement.  As explained above, §§ 9.1 and 9.2 cover the circumstances
that could exist at the time of a prepayment:  if the indebtedness is bearing

interest at a fixed rate at the time of the prepayment, either the Initial Rate or the Adjusted Rate, then § 9.1(b) applies; if the indebtedness is bearing interest at a floating rate because the bonds have somehow become taxable, then § 9.2 applies.  This construction is consistent with the language in the Loan Agreement and related documents, and gives meaning to all the language.  Goodwill's argument to the contrary is not persuasive.

Goodwill also cites the Form 8038 that reported to the IRS that the interest on the bonds was "Variable."  Goodwill argues that this representation demonstrates that the indebtedness is not a fixed rate loan. Therefore, according to Goodwill, § 9.1(b) never applies.  PNC argues that the Form 8038 cannot be considered because it goes beyond the pleadings.  The Court disagrees with PNC.  The Form 8038 is attached to the Complaint, and so, is part of the Complaint for all purposes.  Fed. R. Civ. P. 10(c).  Furthermore, the Form 8038 was signed on October 5, 2007, when all the other documents were signed, and so, is to be construed with the other parts of the agreement.  See GNB Battery Technologies, Inc., 65 F.3d at 622.[3]

---

[3] PNC does not raise any Statute of Frauds issues with respect to the Form 8038 since it was not signed by National City.  The Court, therefore, does not consider any possible issue with the Statute of Frauds.

The Court, however, is not persuaded by the reference to the "Variable" rate on the Form 8038.  According to IRS definitions, a variable yield bond issue is any bond issue that is not a fixed yield issue.  A fixed yield bond issue is a bond issue whose yield is fixed and determinable on the issue date.  26 C.F.R. § 1.148-1(b).  The IRS Instructions for Form 8038 directed the County to mark the yield as variable or "VR" if the bond issue was a variable rate issue.  http://www.unclefed.com/IRS-Forms/2008/i8038.pdf, viewed May 20, 2013.  The Bond issue did not have a fixed and determinable yield on the issue date because the parties intended that the rate would be subject to change to a percentage to be determined on October 5, 2017, ten years after the issue date.  The County, thus, properly indicated on Form 8038 that the yield was variable.

The fact that the yield on the Bond issue was variable for IRS purposes, however, does not affect the applicability of § 9.1(b).  The "fixed rate" language in § 9.1(b) does not relate to the overall yield of the Bond issue.  Section 9.1(b) uses the term "fixed rate" to define the point in time when a prepayment will trigger the Prepayment Charge.  If the prepayment occurs "during a period when the unpaid principal balance bears interest, or is scheduled to bear interest, at a fixed rate" then § 9.1(b) applies and

Goodwill owes any applicable Prepayment Charge.  In this case, Goodwill

proposed a prepayment in full on May 17, 2012.  On that date, the unpaid

principal would be bearing interest at 4.79 per annum and would continue

to do so for more than five years, until October 5, 2017.  The unpaid

principal, therefore, would be bearing interest at a fixed rate on the date of

prepayment, and § 9.1(b) would apply.

Again, Goodwill only asks for a declaratory judgment construing the

terms of the Loan Agreement.  Goodwill does not assert any claims as to

the enforceability of the Prepayment Charge set forth in § 9.1(b) under

Illinois law or the correctness of PNC's calculations of the Prepayment

Charge.  The Court makes no findings on these matters.

WHEREFORE Defendant's Cross-Motion for Judgment on the

Pleadings (d/e 13) is ALLOWED, and Plaintiff's Motion for Judgment on the

Pleadings (d/e 12) is DENIED.  The Court enters judgment on the

pleadings in favor of Defendant PNC Bank, NA, and against Land of

Lincoln Goodwill Industries, Inc., and declares that Goodwill's proposed

prepayment to PNC on May 17, 2012, of its indebtedness evidenced by the

Note and Bonds, as set forth in Goodwill's March 30, 2012, Notice of

Redemption and Prepayment, was subject to the prepayment provisions of § 9.1(b) of the Loan Agreement.  THIS CASE IS CLOSED.

ENTER:  June 3, 2013

*s/ Byron G. Cudmore*
UNITED STATES MAGISTRATE JUDGE